Richard W. MEASE, citizen Daniel M. Gross, citizen and Numerous John Does

v.

H. John HEINZ, III, Senator and Jimmy Carter, de facto President.

Civ. A. No. 78–1106.

United States District Court, E. D. Pennsylvania.

Oct. 12, 1978.

---

**120**

Richard W. Mease, pro se.

Daniel M. Gross, pro se.

Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This litigation arises out of the named plaintiffs' firm belief that The Panama Canal Treaty,[1] which provides for the eventual transfer of certain United States property to the Republic of Panama,[2] is repugnant to

---

1. The Panama Canal Treaty, which is the focus of this litigation, was signed by President Carter and General Herrera of Panama on September 7, 1977, and ratified by the United States Senate on April 18, 1978. *See* S.Exec.Doc. N, 95th Cong., 1st Sess. 8–23 (1977); 124 Cong. Rec. S5,796 (daily ed. Apr. 18, 1978). The Treaty Concerning the Permanent Neutrality and Operation of the Panama Canal, signed by President Carter and General Herrera on September 7, 1977 and ratified by the Senate on March 16, 1978, is not at issue here.

2. Article XIII of The Panama Canal Treaty governs the challenged property transfer. Although the treaty has not yet appeared in U.S. Treaties and Other International Agreements or in Treaties and Other International Agreements

the federal Constitution. Plaintiffs, seeking to redress this alleged departure from the terms of our national charter, filed this complaint *pro se* on April 4, 1978. The complaint names as defendants President Carter, who signed the treaty on September 7, 1977, and Senator H. John Heinz, III, of Pennsylvania, who, along with sixty-seven other senators, voted on April 18, 1978 to ratify the treaty.[3] *See* note 1 *supra.* Plaintiffs bring this action under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3) (1970), and other federal statutes. On behalf of themselves and all others similarly situated, they seek various forms of injunctive relief, including a court-ordered referendum that would enable the American people to decide whether to retain the United States property at issue here. Complaint ¶ 52. In addition, plaintiffs seek an award of compensatory and punitive damages, to be made "payable to a trust fund for building a sea level canal" in the Republic of Panama. *Id.* ¶ 55. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343 (1976).

On August 10, 1978, government counsel moved on behalf of defendants to dismiss the complaint for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). On September 18, 1978, both sides presented oral argument. After careful consideration of the points raised by the parties, I conclude that plaintiffs lack standing to maintain this action, and that the complaint must therefore be dismissed for lack of subject-matter jurisdiction.[4]

■ Two types of rules circumscribe a would-be plaintiff's standing to sue in federal court. First of all, the complaining party must allege that he has suffered "in-

jury in fact," a term that takes its meaning largely from Supreme Court decisions addressing the standing doctrine. *See* L. Tribe, American Constitutional Law § 3–19 (1978). This "injury-in-fact" requirement is "generally regarded as constitutionally mandated" by the case-or-controversy language of article III. *Id.* § 3–18 at 80; *see, e. g., Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 37–39, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Barlow v. Collins,* 397 U.S. 159, 167–68, 178, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) (Brennan, J., concurring). Secondly, the complaining party must satisfy certain prudential limitations on standing that have been developed by the Supreme Court. *See generally United States v. Richardson,* 418 U.S. 166, 196 n.18, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). These prudential rules, while not mandated by article III, nevertheless limit and define a would-be plaintiff's standing to sue in federal court. In the instant case, a prudential rule of this type denies plaintiffs the standing to maintain this action.

■ In their complaint, plaintiffs allude to no possible basis for standing other than their status as concerned citizens. They allege that defendant Carter, by signing a treaty that would transfer United States property to a foreign power, acted beyond the scope of his treaty-making powers under article II, § 2, cl. 2. Plaintiffs further allege that defendant Heinz participated in the ratification of this *ultra vires* treaty, notwithstanding that Congress assertedly lacks power to authorize the gratuitous transfer of United States property.[5]

Series, the full text of the treaty, as signed, appears in S.Exec.Doc. N, *supra* note 1, at 8–23. The Senate, in ratifying the treaty, added certain "reservations" and "understandings," which appear at 124 Cong.Rec. S5,796–97 (daily ed. Apr. 18, 1978).

3. At the time this complaint was filed, of course, the Senate had not yet acted on The Panama Canal Treaty. The complaint alleged only that Senator Heinz had failed to oppose, and indeed had supported, this treaty. Charitably read, however, the constitutional wrongs alleged in the complaint encompass defendant Heinz' subsequent vote on April 18, 1978.

4. In their brief, defendants also argue (1) that this action raises a non-justiciable political question, (2) that the claim against defendant Heinz is absolutely barred by the speech or debate clause of art. I, § 6, and (3) that defendant Carter is immune from legal process by reason of his status as President of the United States. In view of my determination that plaintiffs lack standing to maintain this action, I need not address any of these additional arguments advanced by defendants.

5. Plaintiffs challenge defendant Heinz' actions on two grounds. First, they contend that the property clause, art. IV, § 3, cl. 2, does not

Claims such as these, however, inevitably run up against the Supreme Court's "traditional hostility . . . to federal taxpayer or citizen standing where the plaintiff has nothing at stake other than his interest as a taxpayer or citizen." *United States v. Richardson*, 418 U.S. 166, 192, 94 S.Ct. 2940, 2954, 41 L.Ed.2d 678 (1974) (Powell, J., concurring).

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1975), controls this case. The Court there held that the plaintiffs, whose only interest in the constitutional issue they sought to litigate was "the generalized interest of all citizens in constitutional governance," 418 U.S. at 217, 94 S.Ct. at 2930, lacked standing to sue. Although Chief Justice Burger's opinion for the Court referred to the case-or-controversy language of article III, *Schlesinger v. Reservists Committee* has since been read as an application of prudential, rather than constitutionally mandated, rules of standing. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); L. Tribe, American Constitutional Law § 3–20 at 90 n.7; *The Supreme Court, 1973 Term*, 88 Harv.L.Rev. 41, 241–43 (1974).

■ Plaintiffs here, like the plaintiffs in *Schlesinger v. Reservists Committee*, assert only "a general interest common to all members of the public." *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937) (per curiam), *quoted with approval in Schlesinger v. Reservists Committee, supra*, 418 U.S. at 219–20, 94 S.Ct. 2925. True, plaintiffs claim that United States property, in which they have some unspecified interest, is being unlawfully transferred so

as to deprive them of their interest in that property. However, this does not change the result. Assuming, without deciding, that plaintiffs have some interest in the property that will be transferred under the challenged treaty, their interest is no different from every other citizen's interest in that property. That property is plaintiffs' property only in the sense that all United States property ultimately belongs to all the citizens of the United States. Because plaintiffs allege no distinct interest, apart from the interest of all citizens, in the subject-matter of this constitutional litigation, they lack citizen standing under the rule of *Schlesinger v. Reservists Committee, supra.*

In their brief, plaintiffs object that this rule leads to the result that certain actions taken by elected officials, because they affect all citizens generally and none in particular, simply cannot be challenged in federal court. Plaintiffs' point is well-taken; under *Schlesinger v. Reservists Committee, no one* has standing to challenge certain kinds of governmental actions. However, Chief Justice Burger answered their argument in this way:

> "Our system of government leaves many crucial decisions to the political processes. The assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing."
>
> *Schlesinger v. Reservists Committee, supra*, 418 U.S. at 227, 94 S.Ct. at 2935 (citation omitted).

Accordingly, I cannot say that plaintiffs have standing merely because a contrary ruling might insulate the challenged treaty from review.[6]

---

empower Congress to effect a gratuitous transfer of United States property. *See generally Kleppe v. New Mexico*, 426 U.S. 529, 535–41, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). Second, they argue that no other provision of the Constitution authorizes such a transfer, and that defendant Heinz therefore acted beyond the scope of his authority when he, *qua* Senator, supported (and voted to ratify) the treaty. Plaintiffs specifically invoke the tenth amendment in support of their second contention.

6. It bears mention here that the standing doctrine has not completely blocked judicial review of constitutional challenges to The Panama Canal Treaty. For example, the Court of Appeals for the District of Columbia Circuit recently reached the merits of a lawsuit challenging the effective exclusion of the House of Representatives from participation in the decisions affecting the Canal Zone. *See Edwards v. Carter*, 189 U.S.App.D.C. 1, 580 F.2d 1055 (per curiam), *cert. denied*, 436 U.S. 907, 98

In their brief, plaintiffs observe: "The ideas argued by the Defendants that generalized grievances by individuals against the government can be divided until they are fractionalized into non-existence is shocking." Plaintiffs' Answer to Motion to Dismiss (Document No. 6) at 6–7. Whether or not the Supreme Court's approach to citizen standing is shocking, it is the law of the land, and I am of course bound to follow it here.

█ Plaintiffs rely on the first amendment right "to petition the Government for a redress of grievances" as support for citizen standing in this case. Implicit in their argument is the novel suggestion that the Supreme Court's prudential limitations on citizen standing impermissibly infringe upon the first amendment right of petition. It cannot be denied that the right of petition affords some measure of protection to the citizen who would invoke the judicial process. *See, e. g., California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (common carrier may invoke the judicial process to oppose competitor's attempt to acquire new operating rights; such activities are exempt from the antitrust laws unless they stem from an anticompetitive purpose); *Brotherhood of R.R. Trainmen v. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964) (invalidating state court injunction barring railroad workers' union from referring its members to attorneys for assistance in asserting claims under federal statutes); *N. A. A. C. P. v. Button*, 371 U.S. 415, 430, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963) ("under the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances"). *See generally* Fischel, *Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine*, 45 U.Chi.L. Rev. 80, 96–104 (1977). But the right of petition has never been read to guarantee a federal forum for all litigation aimed at redressing some grievance asserted against the government. Of course, I need not determine here whether the right of petition might ever mandate some minimum degree of citizen access to the federal courts. For present purposes, it should suffice to say that the prudential limitations on citizen standing developed by the Supreme Court do not run afoul of the first amendment.

For the reasons stated above, plaintiffs' status as citizens does not give them standing to maintain this action. Plaintiffs also rely in their brief on their status as taxpayers, however, and I must therefore consider whether plaintiffs may properly assert taxpayer standing here.

█ The present contours of the law governing federal taxpayer standing are relatively clear. "A taxpayer of course has standing to challenge the validity or application of a taxing statute in determining his or her tax obligation." L. Tribe, American Constitutional Law § 3–19 at 83 (1978). But where the taxpayer is not challenging a statute or regulation that directly determines his tax obligation, he has standing only to challenge "exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 1954, 20 L.Ed.2d 947 (1968); *see Schlesinger v. Reservists Committee, supra*, 418 U.S. at 227–28, 94 S.Ct. 2925; *United States v. Richardson*, 418 U.S. 166, 172–73, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); L. Tribe, American Constitutional Law § 3–19 at 84 (1978). Moreover, the taxpayer in such a case must also "show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Flast v. Cohen, supra*, 392 U.S. at 102–03, 88 S.Ct. at 1954.

S.Ct. 2240, 56 L.Ed.2d 406 (1978). Although the district court there determined that the plaintiffs, who were members of the House of Representatives, lacked standing to maintain the action, the court of appeals nevertheless found for defendants on the merits. *See also Helms v. Vance*, No. 77–83 (D.D.C. Mar. 23, 1977), *aff'd mem.*, No. 77–1295 (D.C.Cir. May 3, 1977), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1079 (1977).

Inasmuch as plaintiffs do not challenge any determination of their own tax obligations, they must satisfy the two-part test of *Flast v. Cohen, supra,* in order to assert taxpayer standing here.[7]

■ Insofar as plaintiffs challenge actions taken by defendant Carter, the head of the *executive* branch of government, they plainly fail to satisfy the first requirement of *Flast v. Cohen. See Schlesinger v. Reservists Committee, supra,* 418 U.S. at 228, 94 S.Ct. 2925 (taxpayers lacked standing to challenge "the action of the Executive Branch in permitting Members of Congress to maintain their Reserve status"). Plaintiffs therefore lack standing to challenge defendant Carter's actions here. *Id.*

■ With respect to defendant Heinz, on the other hand, plaintiffs contend that his actions in supporting (and voting to ratify) the challenged treaty were beyond the scope of his authority *qua* Senator, and hence violative of the tenth amendment. *See* note 5 *supra.* This claim, however, satisfies neither aspect of *Flast v. Cohen.* First, plaintiffs challenge an individual senator's exercise of the Senate's power to advise and consent to treaties, rather than a congressional exercise of the taxing and spending power. Second, their claim rests on the tenth amendment, rather than on some specific limitation on the congressional taxing and spending power. *See Flast v. Cohen, supra,* 392 U.S. at 105, 88 S.Ct. 1942. Because their claim falls outside the scope of *Flast v. Cohen,* plaintiffs lack taxpayer standing to maintain this action.

Inasmuch as plaintiffs lack standing, whether as citizens or as taxpayers, I must dismiss this action for want of subject-matter jurisdiction. In doing so, of course, I

intimate no views as to the merits of their constitutional claims.

---

7. Although *Flast v. Cohen* was reaffirmed by the Supreme Court in 1974, it has drawn sharp criticism. *See, e. g., United States v. Richardson,* 418 U.S. 166, 180, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring) (the *Flast v. Cohen* standard "should be abandoned"); *Flast v. Cohen, supra,* 392 U.S. at 116–33, 88 S.Ct. 1942 (Harlan, J., dissenting); A. Bickel, The Supreme Court and the Idea of Progress 63–65, 76, 107–08 (Torchbook ed. 1970); L. Tribe, American Constitutional Law §§ 3–19 at 83–84, 3–22 at 98–100 (1978); Scott,

*Standing in the Supreme Court—A Functional Analysis,* 86 Harv.L.Rev. 645, 660–62 (1973); Tushnet, *The New Law of Standing: A Plea for Abandonment,* 62 Cornell L.Q. 663, 688–99 (1977); *The Supreme Court, 1973 Term,* 88 Harv.L.Rev. 41, 237–38 (1974). *See also Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 73–82, 98 S.Ct. 2620, 2631–2635, 57 L.Ed.2d 595 (1978) (second aspect of *Flast v. Cohen* standard expressly limited to taxpayer suits).