**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1481
_____

NATIONAL ASSOCIATION FOR THE ADVANCEMENT
OF MULTIJURISDICTION PRACTICE (NAAMJP);
RICHARD H. ROSARIO; PAUL J. RIVIERE,
Appellants

v.

HON. CHIEF JUSTICE RONALD D. CASTILLE;
HON. THOMAS G. SAYLOR; HON. J. MICHAEL EAKIN;
HON. MAX BAER; HON. DEBRA MCCLOSKEY TODD;
HON. SEAMUS P. MCCAFFERY;
HON. CORREALE F. STEVENS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:13-cv-07382)
District Judge:  Honorable Gerald A. McHugh
_____

Submitted under Third Circuit LAR 34.1(a)
June 25, 2015

Before: CHAGARES, KRAUSE, and BARRY, <u>Circuit Judges</u>

(Opinion filed: August 26, 2015)

_____

Joseph R. Giannini, Esq.
Room 5
12016 Wilshire Boulevard
Los Angeles, CA 90025

    *Counsel for Appellants*

Michael Daley, Esq.
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102

    *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

KRAUSE, <u>Circuit Judge</u>

We consider here a constitutional challenge to Pennsylvania Bar Admission Rule 204, which allows experienced attorneys to be admitted to the Pennsylvania bar

without taking the Pennsylvania bar exam provided they are barred in a "reciprocal state," that is, a state that similarly admits Pennsylvania attorneys by motion without requiring them to take that state's bar exam. In a thorough and well-reasoned opinion, the District Court upheld Rule 204, and we will affirm.

## I. Background

Rule 204 allows an attorney to join the Pennsylvania bar by motion, without taking the Pennsylvania bar exam, if the attorney has graduated from an accredited law school, has either passed the bar exam or practiced law for the "major portion" of five of the preceding seven years in a reciprocal state, remains a member in good standing of every bar to which the attorney has been admitted, obtains a favorable moral character determination in Pennsylvania, achieves a sufficient score on the Multistate Professional Responsibility Exam, and has not previously failed the Pennsylvania bar exam. *See* Pa. Bar Admission Rule 204(1)-(8). Thirty-eight states and the District of Columbia have reciprocity agreements with Pennsylvania. In addition, Pennsylvania allows attorneys admitted in any state to apply for *pro hac vice* admission, i.e., to be "specially admitted to the bar of th[e] Commonwealth for purposes limited to a particular case." Pa. Bar Admission Rule 301.

Appellants Richard Rosario, Paul Riviere, and the National Association for the Advancement of Multijurisdictional Practice ("NAAMJP") filed this suit against Appellees, who are Justices of the Pennsylvania Supreme Court responsible for promulgating Rule 204. Rosario graduated from an accredited law school in Maryland and is admitted to practice law in Maryland and Washington,

3

D.C. He applied for admission to the Pennsylvania bar but was rejected because Maryland is not a reciprocal state and because he had not taken the District of Columbia bar exam or devoted the requisite amount of time to practicing law there. Riviere is a member of the New Jersey bar, another non-reciprocal state. He asserts that he wants to apply for reciprocal admission in Pennsylvania but has not because he would be rejected. Both Rosario and Riviere are members of NAAMJP, an organization dedicated to extending reciprocal bar admission to additional states.

Appellants contend Rule 204 violates the Equal Protection and Privileges or Immunities Clauses of the Fourteenth Amendment, the First Amendment, the Privileges and Immunities Clause of Article IV, and the Dormant Commerce Clause. The District Court granted summary judgment for Appellees, and Appellants filed a timely appeal.[1]

---

[1] The District Court, after a careful analysis, found that both Rosario and Riviere have standing to press their claims because their alleged injury—denial of admission to the Pennsylvania bar—is concrete and particularized; caused by Rule 204; actual and imminent; and redressable by the remedy sought in this suit. *See Nat'l Ass'n for Advancement of Multijurisdictional Practice (NAAMJP) v. Castille*, 66 F. Supp. 3d 633, 639-40 (E.D. Pa. 2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Additionally, the District Court found that NAAMJP could establish associational standing under *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). *See NAAMJP*, 66 F. Supp. 3d at 642. We are satisfied that at least one Appellant has standing, allowing us to proceed to the

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party.  *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012).

## III.     Discussion

### A.     Fourteenth Amendment

We begin with Appellants' argument that Rule 204 violates the Fourteenth Amendment's Equal Protection and Privileges or Immunities Clauses.  We confronted a similar challenge in *Schumacher v. Nix*, 965 F.2d 1262 (3d Cir. 1992).  There, we reviewed Pennsylvania Bar Admission Rule 203, which permits graduates of unaccredited law schools to sit for the Pennsylvania bar exam if they are members of the bar of, and have practiced law for five years in, a reciprocal state, but not if their admission and five years of practice are in a non-reciprocal state.  *Id.* at 1264.

The plaintiffs in *Schumacher* graduated from an unaccredited California law school, passed the California bar exam, practiced law in California for five years, and remained members in good standing of the California bar, but because California is a nonreciprocal state, the plaintiffs were ineligible to sit for the Pennsylvania bar exam.  They argued

---

merits.  *See Schumacher v. Nix*, 965 F.2d 1262, 1264 n.1 (3d Cir. 1992) (citing *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)).

that Rule 203 violated the Equal Protection Clause because it "substantially interfere[d] with their fundamental right to interstate travel by discouraging them from moving to Pennsylvania" and urged us to apply strict scrutiny, although they also argued that Rule 203 could not survive rational basis review. *Id.* at 1265. We rejected both contentions, concluding that rational basis review applied because Rule 203 "neither establishes a classification based on residency nor erects a barrier to migration," and that Rule 203 passed that review because "Pennsylvania has a legitimate interest in securing mutual treatment for . . . its attorneys seeking admission to the bars of other states." *Id.* at 1268, 1272. "By allowing attorneys who are graduates of unaccredited law schools from reciprocal states to sit for its bar examination," we observed, "Pennsylvania may entice states to enter into reciprocal agreements with it." *Id.* at 1272.

We reach the same conclusion here. Rule 204 does not classify attorneys based on residency, but rather, their state of bar admission, and it does not erect a barrier to migration. *See id.* at 1267-68 ("Surely, the Rule has some deterrent effect on nonresident attorneys who wish to migrate to Pennsylvania but choose not to because they are ineligible to sit for the Pennsylvania bar examination. However, the Constitution does not guarantee that citizens of State A may move to State B and enjoy the same privileges they did as citizens of State A, only that citizens of State A may move to State B and be treated on similar terms as the citizens of State B."). It also does not classify applicants based upon "inherently suspect distinctions such as race, religion, or alienage." *Id.* at 1266 (internal quotation mark omitted). As a result, Rule 204 is subject to rational basis review, and, like Rule 203, it furthers Pennsylvania's legitimate interest in

6

securing favorable treatment for attorneys admitted in Pennsylvania if and when they seek to join the bars of other states (which, in turn, might motivate more attorneys to seek admission in Pennsylvania, increasing access to legal services for citizens of the Commonwealth). We thus reject Appellants' Equal Protection Clause challenge, and, for the same reasons, we reject their Fourteenth Amendment Privileges or Immunities Clause challenge. *See Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (citing *Schumacher*, 965 F.2d at 1266) (reviewing Fourteenth Amendment Equal Protection and Privileges or Immunities claims "under the same standard").

### B.    First Amendment

Appellants next argue that Rule 204 infringes upon various rights protected by the First Amendment, including free speech, free association, and the right to petition.

### 1.    Freedom of Speech

We must first determine what level of scrutiny applies to the purported restriction on speech. Appellants contend Rule 204 constitutes content and viewpoint discrimination, which are both, as a general matter, subject to strict scrutiny. *See Startzell v. City of Phila.*, 533 F.3d 183, 193 (3d Cir. 2008). They also argue that Rule 204 is an unlawful restriction on professional speech, seeking to analogize it to the law we confronted in *King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 2048 (2015). *King* involved a challenge to a New Jersey statute prohibiting licensed counselors from engaging in "sexual orientation change efforts" with a client under the age of eighteen. *Id.* at 220. While we upheld the statute, we

7

concluded such counseling constituted professional speech and explained that "a prohibition of professional speech is permissible only if it 'directly advances' the State's 'substantial' interest in protecting clients from ineffective or harmful professional services, and is 'not more extensive than necessary to serve that interest.'" *Id.* at 235 (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)).

Appellees ask us to instead treat Rule 204 as a time, place, and manner restriction on speech, as the Ninth Circuit did in a case related to this one involving an Arizona rule identical to Rule 204. *See Nat'l Ass'n for the Advancement of Multijurisdictional Practice v. Berch*, 773 F.3d 1037, 1047 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2374 (2015). Such restrictions are valid provided "[1] [that] the restrictions are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication." *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 388 (3d Cir. 2010) (first, third, and fourth alterations in original) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotation marks omitted).

We disagree with both parties' characterizations. First, Rule 204 does not discriminate on the basis of the subject matter or viewpoint of any bar applicant's speech, the area of law an applicant would practice, or the clients an applicant would represent. In fact, nothing in the record suggests that Pennsylvania is even aware of the views of the Appellants or any other applicant, or of what applicants will say or do during their legal careers. Therefore, Rule 204 does not "pass judgment on the content of [any] speech." *Thomas v. Chi.*

8

*Park Dist.*, 534 U.S. 316, 322 (2002); *see also Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994) [hereinafter "*TBS*"] ("[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.").

Neither does Rule 204 regulate when, where, or how attorneys speak, nor does it prohibit a category of professional speech like the statute at issue in *King*. Rather, the only restriction Rule 204 imposes on Appellants is that they must take the Pennsylvania bar exam or apply for *pro hac vice* status to practice law in Pennsylvania. Thus, the rule also cannot be pegged as a time, place, and manner restriction.

Instead, we conclude Rule 204 is an exercise of Pennsylvania's "broad power to establish standards for licensing practitioners and regulating the practice of professions." *King*, 767 F.3d at 229 (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)) (internal quotation marks omitted). Because it regulates only the requirements for *obtaining* a license to practice law and does not "restrict[] what a professional can and cannot say," Rule 204 does not "create[] a 'collision between the power of government to license and regulate those who would pursue a profession or vocation and the rights of freedom of speech . . . guaranteed by the First Amendment.'" *Id.* (quoting *Lowe v. SEC*, 472 U.S. 181, 228 (1985) (White, J., concurring in the judgment)).

It has long been true that "[a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar," so long as any requirement has "a rational connection with the applicant's fitness or capacity to practice law."

*Schware v. Bd. of Bar Exam'rs of N.M.*, 353 U.S. 232, 239 (1957). While *Schware* itself involved a Due Process challenge rather than a First Amendment one, the influential opinions of Justice Jackson in *Thomas v. Collins*, 323 U.S. 516 (1945), and Justice White in *Lowe v. SEC*, 472 U.S. 181 (1985), that were central to our decision in *King* (as well as recent professional speech cases from other Circuits) make clear that the same analysis applies. *See King*, 767 F.3d at 229-31; *see also Lowe*, 472 U.S. at 228 (White, J., concurring in the judgment) ("Regulations on entry into a profession, as a general matter, are constitutional if they 'have a rational connection with the applicant's fitness or capacity to practice' the profession." (quoting *Schware*, 353 U.S. at 239)); *Collins*, 323 U.S. at 544 (Jackson, J., concurring) ("A state may forbid one without its license to practice law as a vocation . . . .").

In sum, because Rule 204 is not a prohibition or other restriction on professional speech, but rather, a content-neutral licensing requirement for the practice of law, it is valid under the First Amendment if it has a rational connection with the applicant's fitness or capacity to practice the profession. Rule 204 easily passes this test.

While Appellants raise intriguing arguments as to the virtues of the bar exam requirement, they cannot meet their burden of "negati[ng] every conceivable basis which might support [the rule], whether or not the basis has a foundation in the record." *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 876 (3d Cir. 2012) (quoting *Heller v. Doe*, 509 U.S. 321, 320-21 (1993)) (internal quotation mark omitted). Ultimately, it is not our role to "judge the wisdom, fairness, or logic of legislative choices." *Parker v. Conway*, 581 F.3d 198, 202 (3d Cir. 2009) (quoting *FCC v. Beach Commc'ns,*

10

*Inc.*, 508 U.S. 307, 313 (1993)) (internal quotation mark omitted).

While according to Appellants, Appellees have conceded that Rule 204 "has nothing to do with [attorney] competence or client protection in Pennsylvania," Appellant's Br. 6, Appellees have done no such thing. It is true that the parties stipulated that "Pennsylvania's interest in the *reciprocity provision* is to ease the burden of bar admission for Pennsylvania attorneys seeking to practice law in other states." App. 52 (emphasis added). But the relevant feature of Rule 204 in determining whether the Rule imposes an unlawful restriction on Appellants' speech is the requirement that, if they do not meet its requirements, they must take the Pennsylvania bar exam or apply for *pro hac vice* admission to practice law in Pennsylvania. Appellees certainly have not admitted that the bar exam or *pro hac vice* requirements have nothing to do with client protection. Appellants' quarrel with the waiver of those requirements for certain attorneys must be viewed as an argument that Rule 204 is underinclusive or discriminatory (an argument we discuss and reject below), not that the Rule has nothing whatsoever to do with client protection.

Accordingly, our suggestion in *King* that "[a] state law [prohibiting professional speech] may be subject to strict scrutiny if designed to advance an interest unrelated to client protection" has no bearing here. *See* 767 F.3d at 235. Additionally, our conclusion in *Schumacher* that Pennsylvania's decision to prevent graduates of unaccredited law schools barred in nonreciprocal states from taking the Pennsylvania bar exam did not "promote[] Pennsylvania's interest in ensuring a competent bar," 965 F.2d at 1270 n.11, does not compel a different result. *Schumacher* involved an

11

Equal Protection challenge, so our focus was on the different treatment of members of reciprocal and nonreciprocal bars, *see id.* at 1266, 1269-70, as was our focus here in rejecting Appellants' own Equal Protection arguments, *see supra* pp. 4-6. For First Amendment purposes, however, our focus is on the restriction on speech, if any, and any challenge to an allegedly disparate application of that restriction must be analyzed as a question of underinclusiveness or content or viewpoint discrimination.

Pennsylvania's decision to allow experienced attorneys in reciprocal states, but not nonreciprocal states, to apply for admission by motion does not undermine Rule 204's rational basis on either underinclusiveness or content or viewpoint discrimination grounds. Even if that decision rendered Rule 204 underinclusive, the Rule could nevertheless survive rational basis review, especially because accommodating attorneys admitted in reciprocal states furthers the legitimate "secondary objective[s]" of securing favorable treatment for attorneys admitted in Pennsylvania and making admission to the Pennsylvania bar more attractive. *See Vance v. Bradley*, 440 U.S. 93, 109 (1979). And despite Appellants' claims to the contrary, the fact that attorneys of reciprocal states face fewer hurdles to admission than attorneys of nonreciprocal states does not constitute speaker discrimination. Speaker-partial laws trigger heightened scrutiny only "when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to stay)." *TBS*, 512 U.S. at 658;[2]

---

[2] Appellants are correct that *TBS* applied intermediate scrutiny, rather than rational basis review, after rejecting strict scrutiny. *See TBS*, 512 U.S. at 661-62. *TBS* involved the

*see also Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 548 (1983) (rejecting First Amendment challenge to differential tax treatment of veterans groups and other charitable organizations absent any "indication that the statute was intended to suppress any ideas or any demonstration that it has had that effect"); *cf. Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (explaining that "attempts to disfavor certain subjects or viewpoints" and "restrictions distinguishing among different speakers" are "interrelated," as "[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content"). Rather, as we have noted, Rule 204 does not reward, punish, or even acknowledge the content or viewpoint of any attorney's speech.

Finally, we reject Appellants' contention the Rule 204 places an unconstitutional prior restraint on speech, as

---

"must-carry" provisions of the Cable Television Consumer Protection and Competition Act of 1992, which require cable television systems to devote a portion of their channels to the transmission of local broadcast stations. *Id.* at 626. The Court characterized those provisions as "content-neutral restrictions that impose an incidental burden on speech," and concluded they deserved the same scrutiny as the time, place, and manner restrictions at issue in *Ward* and the prohibition on burning Selective Service registration cards at issue in *United States v. O'Brien*, 391 U.S. 367 (1968). *TBS*, 512 U.S. at 661-62 (citing *Ward*, 491 U.S. at 799; *O'Brien*, 391 U.S. at 377). *TBS* does not support the notion, however, that intermediate scrutiny applies to professional licensing requirements.

13

Pennsylvania does not "determine whether [an] applicant" should be admitted "on the basis of its review of the content" of the applicant's speech. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975). Indeed, Rule 204 does not compel speakers to seek approval before they engage in any particular speech, but instead, imposes general prerequisites to practicing law in Pennsylvania. *See Citizens United*, 558 U.S. at 335. Moreover, the rule does not give officials "unbridled discretion" to prohibit speech, *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988), as it provides objective criteria for admission, and all admissions decisions are subject to judicial review, *see* Pa. Bar Admission Rules 204, 222. In sum, we conclude that Rule 204 does not violate the First Amendment's protection of free speech.[3]

## 2. Freedom of Association

Appellants next assert that Rule 204 violates their freedom of association. There are two such freedoms protected by the First Amendment: "intimate association and expressive association." *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 (3d Cir. 2000) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984)). Appellants invoke only the latter, arguing that Rule 204 imposes penalties and withholds benefits because of their membership in the bars of nonreciprocal states. We outlined a three-step process for analyzing an expressive association claim in *Pi Lambda Phi*: First, we consider "whether the group making the claim engaged in expressive association";

---

[3] The District Court rejected Appellants' argument that Rule 204 is unconstitutionally overbroad. Because Appellants have not challenged that conclusion on appeal, we will not disturb it.

second, we ask "whether the state action at issue significantly affected the group's ability to advocate its viewpoints"; and third, we "weigh[] the state's interest implicated in its action against the burden imposed on the associational expression to determine if the state interest justified the burden." *Id.* at 442 (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)).

Assuming, without deciding, that Appellants are members of a group that "engage[s] in constitutionally protected expressive association," Rule 204 does not "significantly affect[]" their ability to advocate any viewpoints. *Pi Lambda Phi*, 229 F.3d at 445. It does not "require [Appellants] to associate with anyone," nor is it "directed on its face at [their] expressive or associational activities." *Id.* at 446. Again, Appellants are able to practice law in Pennsylvania if they take the Pennsylvania bar exam or apply for *pro hac vice* admission. As a result, any impact on Appellants' expressive activities is "indirect and attenuated" and "do[es] not rise to the level of a constitutional violation." *Id.* at 438-39 (citing *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986)). Thus, Rule 204 does not violate Appellants' freedom of association. *Accord Berch*, 773 F.3d at 1047-48.

### 3. Right to Petition

Lastly, we reject Appellants' claim that Rule 204 is an impermissible violation of their First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend. I. The Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2494 (2011). Appellants provide no support for the proposition that the

Petition Clause protects the right of an *attorney* to appeal to courts or other forums on behalf of another. Further, they maintain the right to represent clients in Pennsylvania courts so long as they take the bar exam or apply for *pro hac vice* admission. *See Berch*, 773 F.3d at 1048. Simply put, Rule 204 does not violate the First Amendment.

## C.    Article IV Privileges and Immunities Clause

Appellants next argue that Rule 204 violates Article IV's Privileges and Immunities Clause by depriving them of the right to practice law in Pennsylvania. *See* U.S. Const. art. IV, § 2. While Appellants are correct that the practice of law is a fundamental right for Privileges and Immunities purposes, *see Supreme Court of N.H. v. Piper*, 470 U.S. 274, 281 (1985), the Clause does not foreclose a state's ability to treat residents and nonresidents differently, *Saenz v. Roe*, 526 U.S. 489, 502 (1999). It bars only "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Id.* (internal quotation mark omitted).

In *Tolchin v. Supreme Court of New Jersey*, 111 F.3d 1099 (3d Cir. 1997), we established a two-part inquiry to evaluate a Privileges and Immunities claim: First, does the challenged rule discriminate against nonresidents? *Id.* at 1113. Second, if it does, is the imposition too heavy a burden on the privileges of nonresidents, and does it bear a substantial relationship to the state's objective? *Id.* Under this test, Rule 204 does not contravene Article IV's Privileges and Immunities Clause because it treats Pennsylvania residents no differently than out-of-state residents. Rule 204 inquires not into an applicant's state of residency, but rather,

his or her state of bar membership. For example, a Pennsylvania resident barred only in New Jersey would, like a New Jersey resident barred only in New Jersey, be unable to join the Pennsylvania bar by motion, because New Jersey is not a reciprocal state. As a result, this claim, too, fails. *Accord Berch*, 773 F.3d at 1046.

## D. Dormant Commerce Clause

Appellants' final argument is that Rule 204 violates the Dormant Commerce Clause. We begin by asking whether the state law discriminates against interstate commerce on its face or in its purpose or effect. *See Heffner v. Murphy*, 745 F.3d 56, 72 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 220 (2014); *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006). If it does, it is invalid unless it "serves a legitimate local purpose" that "could not be served as well by available nondiscriminatory means." *Cloverland*, 462 F.3d at 261 (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)) (internal quotation mark omitted). "By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

We agree with the District Court that Rule 204 "does not discriminate against out-of-state commerce on its face, . . . [n]or is there other evidence that the purpose or effect of the Rule is to favor in-state economic interests over out-of-state interests." *Nat'l Ass'n for Advancement of Multijurisdictional Practice (NAAMJP) v. Castille*, 66 F.

17

Supp. 3d 633, 652 (E.D. Pa. 2014). Again, Rule 204 does not classify applicants based on residence. Further, any incidental effect on interstate commerce of declining to admit by motion attorneys barred in nonreciprocal states is mitigated by the existence of alternative means of admission, i.e., taking the Pennsylvania bar exam, and any such effect is not "clearly excessive" in relation to Pennsylvania's interests in regulating its bar and securing favorable treatment for Pennsylvania-barred attorneys. Moreover, Rule 204 "arguably promotes some [interstate] commerce" because it permits admission by motion for attorneys barred in thirty-eight states and the District of Columbia, thus facilitating their admission in Pennsylvania. *Berch*, 773 F.3d at 1049. It therefore does not violate the Dormant Commerce Clause.

## IV.    Conclusion

For the foregoing reasons, we will affirm the District Court's Order.[4]

---

[4] Because we reject each of Appellants' claims, we need not decide whether Appellees are entitled to legislative immunity.

18