Bernard C. DePAOLI, Plaintiff,

v.

Stephen S. CARLTON, individually and in his official capacity as District Attorney for the County of Shasta, Larry Jarrett, individually and in his official capacity as a Deputy Sheriff for the County of Shasta, and Alan D. Bradley, Defendants.

No. CIV. S–92–0068–WBS/PAN.

United States District Court, E.D. California.

Jan. 27, 1995.

---

Bernard C. DePaoli, pro se.

G. Dennis Halkides, Halkides and Morgan, Redding, CA, James Constantine Pappas, Hallades and Morgan, Redding, CA, for Stephen S. Carlton and Larry Jarrett.

## MEMORANDUM AND ORDER

SHUBB, District Judge.

Plaintiff Bernard DePaoli brings this civil rights action against various officers of Shasta County under 42 U.S.C. §§ 1983 and 1988. Defendants' motion to dismiss the original complaint for failure to state a claim was granted on March 23, 1992 and plaintiff was granted leave to amend. The case is now before the court on defendants' alternate motions to dismiss the First Amended Complaint filed April 2, 1992 pursuant to Fed. R.Civ.P. 12(b)(6), and for summary judgment pursuant to Fed.R.Civ.P. 56.

Defendants have submitted affidavits and supporting documents in support of their motion. At oral argument plaintiff agreed that this motion could be considered under Fed. R.Civ.P. 56. Plaintiff has elected to submit no documents in opposition to defendants' motion. The alternative motions are considered separately. In considering both motions, the court takes into account DePaoli's status as a litigant proceeding in propria

persona. However, the court also takes into account the fact that DePaoli is a lawyer, and indeed, was at one time the elected District Attorney of Humboldt County. Complt. ¶ 2.

## I. MOTION TO DISMISS

### A. Facts

For purposes of the motion to dismiss, all the plaintiff's allegations are accepted as true, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), and all reasonable inferences are drawn in plaintiff's favor. *Retail Clerks International Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1466 n. 6, 10 L.Ed.2d 678 (1963). Accordingly, the following statement of the facts is based on the version tendered by plaintiff in his First Amended Complaint.[1]

On March 1, 1988, Philip Kellotat was arrested and charged with the murder of Vincent Capitan. ¶ 18. Though the charges against him were soon dropped due to lack of evidence, Kellotat remained in custody in the Shasta County Jail on an unrelated matter. ¶¶ 19, 20. About this time, Kellotat first retained Bernard DePaoli as defense counsel. ¶ 20. In April, 1988, while Kellotat was still in custody, Shasta County authorities were contacted by defendant Alan Bradley,[2] who was then serving a seven-year sentence in the California State Penitentiary. ¶ 21. Bradley offered information implicating Kellotat in Capitan's murder in exchange for an early release from prison. ¶ 21. In July, 1988, on the basis of Bradley's statements, Kellotat was again charged with Capitan's murder. ¶ 22. Again, he retained DePaoli as his defense attorney. ¶ 23.

At this time, defendants Larry Jarrett, a Shasta County Sheriff's Captain, and Steve Carlton, then Shasta County District Attorney,[3] allegedly initiated the first of a number of attempts to prevent DePaoli from representing Kellotat. In August, 1988, while DePaoli was attempting to finalize financial arrangements with Kellotat's family, Jarrett met with Kellotat's relatives in Los Angeles and attempted to convince them not to hire DePaoli. ¶ 24. This effort failed, however, and plaintiff became Kellotat's attorney of record at an October 15, 1988 arraignment. ¶ 26.

Meanwhile, Alan Bradley decided to approach DePaoli. He commenced a series of collect phone calls to the attorney in an attempt to make a deal for testimony more favorable to Kellotat. ¶ 31. For instance, during a phone call made on October 28, 1988, Bradley offered testimony that would clear Kellotat in exchange for $5,000. ¶ 29. On another occasion, Bradley offered testimony in exchange for legal assistance for himself and for his girlfriend, Dawn Walker. ¶ 30. After these phone calls failed to produce a better deal, Bradley approached Carlton and Jarrett and informed them that he could get DePaoli to "bribe" him on tape. ¶ 33.

Carlton and Jarrett agreed. Between November 1, 1988 and November 10, 1988, Carlton and Jarrett recorded seven phone calls and one jail visit between DePaoli and Bradley. ¶ 35. Bradley was coached by both Carlton and Jarrett on what to say during the conversations. ¶ 34. During the conversations, Bradley stated that he had lied to the prosecutors, and that he was willing to testify truthfully on Kellotat's behalf in exchange for money or other assistance for Walker and himself. ¶ 29. On November 8,

---

1. Unless otherwise indicated, the abbreviated citations which follow refer to the paragraph number of Plaintiff's First Amended Complaint.

2. Bradley, while still a named defendant, has not been served and has not appeared in this action. DePaoli Dep. 52:14–18.

3. Defendants argue separately for dismissal of all claims against the County of Shasta on the grounds that plaintiff has failed to produce facts which would support a finding of the necessary element of a wrongful municipal policy or custom. *See Monell v. Department of Social Ser-*

*vices,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). While plaintiff has not named the county as a defendant, he has named both Carlton and Jarrett as defendants in their official capacities. This is effectively the same as suing the county. *See Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). This argument will not be considered separately, however, since the same defect in DePaoli's claims adhere as against each defendant—no constitutionally protected right has been infringed upon.

1988, $400 was sent to Dawn Walker by Carl Smith. ¶ 37.[4]

On November 28, 1988, still unaware that his conversations with Bradley had been recorded, DePaoli arrived at the Redding, California Courthouse for an appearance in the Kellotat case. ¶ 38. He was met by Jarrett and another Sheriff's Detective and taken to the Shasta County Sheriff's Office for questioning. ¶ 38. At that time DePaoli was told that his conversations with Bradley had been recorded. During the questioning, DePaoli was informed that no charges would be filed against him if he were to withdraw from the Kellotat case. ¶ 39. Sensitive to a possible conflict of interest, DePaoli asked the court for permission to withdraw. ¶ 40. One week later, DePaoli informed the court that Kellotat still wanted DePaoli as his defense counsel. ¶ 42. Soon after, DePaoli was informed by Jarrett that bribery charges would be filed against him. ¶ 43. Plaintiff was reinstated as counsel of record by the Redding Municipal Court in the Kellotat case on December 9, 1988. ¶ 44. Later that same day, Carlton filed bribery charges against DePaoli. ¶ 45.

Afterwards, Carlton continued to oppose DePaoli's representation of Kellotat. After Kellotat's case was certified to the Shasta County Superior Court for trial, DePaoli sought to be named attorney of record so that his continued representation of the now indigent Kellotat could be paid by county funds. ¶ 48. Carlton opposed this, with the ultimate result being that DePaoli was permitted to represent Kellotat, but he was not paid. ¶ 49. Three months later, after a jury trial, Kellotat was found not guilty of all charges. ¶ 50.

**B. Standard**

■ The court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). A claim may be properly dismissed under Rule 12(b)(6) where the plaintiff fails to allege facts which would support a "cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (1988).

**C. Analysis**

Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A § 1983 claim has two elements: (1) the conduct complained of must have been committed under color of state law, and (2) the conduct must have deprived the plaintiff of some constitutional right. *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir.1984). Since defendants concede that the conduct in question here was "under color of state law," Defendants Memorandum of Points and Authorities at 7, the only issue is whether defendants' alleged conduct subjected DePaoli to a deprivation of his constitutional rights.[5]

DePaoli maintains that it did, and he pleads six separate claims.[6] Each is based

---

**4.** Nothing in the record suggests a connection between DePaoli and Smith.

**5.** The analysis does not address DePaoli's § 1988 claims, since § 1988 does not provide for an independent cause of action. *Brower v. City of Inyo,* 817 F.2d 540, 546 (9th Cir.1987), rev'd on other grounds 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

**6.** The claims are based on the following: (1) Jarrett's attempt to persuade Kellotat's relatives not to hire DePaoli; (2) Jarrett, Carlton and Bradley's efforts to set up DePaoli during the taped conversations so as to create a moral conflict in which DePaoli would feel compelled to withdraw as Kellotat's counsel; (3) Jarrett, Carlton and Bradley's efforts to set up DePaoli during the taped conversation in an attempt to force him to testify against his own client; (4) Jarrett,

on alleged violations of his First Amendment right to petition the court for redress of grievances and his Fourteenth Amendment right to practice law.[7] DePaoli's theory of the case is that Carlton and Jarrett, along with Bradley, engaged in a series of actions designed to disrupt the attorney-client relationship between DePaoli and Kellotat, and ultimately to prevent DePaoli from defending Kellotat. Regardless of the truth of DePaoli's allegations, each of his claims must be dismissed because none of them are based upon a constitutionally protected right.

Plaintiff's argument that defendants' conduct amounted to a deprivation of his First Amendment right to petition the court for redress of grievances is groundless. The right to petition the government for redress of grievances is personal. In the context of a court proceeding the right to petition is the client's, not the attorney's. An attorney may not claim a right to petition based upon representation of a client. *See Mease v. Heinz,* 80 F.R.D. 119, 123 (D.Pa. 1978) (standing requirement does not impinge on right to petition government for redress of grievances). If any First Amendment right was impinged in this case, it was Kellotat's, not DePaoli's.

Likewise, DePaoli had no constitutional right to represent Kellotat. In order to state a § 1983 claim on the basis of his Fourteenth Amendment rights, DePaoli must allege that the defendants' actions deprived him of liberty or property without due process of law.[8] Several reported decisions, though none from the Ninth Circuit, have addressed similar questions. The court looks to these as persuasive authority.

Especially instructive is *Goulding v. Feinglass,* 811 F.2d 1099 (7th Cir.1987). There, a tax attorney brought a § 1983 action against several Internal Revenue Service employees. He alleged that during the course of investigating him, the I.R.S. agents had conspired to destroy his "practice as a lawyer." *Id.* at 1100–01. As in the instant case, Goulding alleged a pattern of harassment which included allegations of threats, defamation and efforts to discourage clients from retaining Goulding as their counsel.[9] *Id.* at 1100–01. Goulding alleged that these actions deprived him of his property right in his law practice and his liberty interest in his reputation. *Id.* at 1102–03.[10] The court rejected both arguments. First, it upheld a lower court finding that Goulding had not been deprived of a property interest since his legal right to practice law and his status as a lawyer had not been "removed or significantly altered"

---

Carlton and Bradley's efforts to set up DePaoli during the taped conversations so as to create a conflict of interest which would pressure the court into removing DePaoli as attorney of record; (5) Carlton's filing of the bribery charge in retaliation for DePaoli's refusal to step down as Kellotat's attorney; and (6) Jarrett, Carlton and Bradley's efforts to set up DePaoli during the taped conversations so as to make DePaoli choose between withdrawing or continuing to represent Kellotat without benefit of compensation.

7. DePaoli also makes scattered references to the Fourth, Fifth, and Sixth Amendments in his complaint. However, plaintiff produces no facts sufficient to support a finding that he was subject to an unreasonable arrest or search and seizure in violation of the Fourth Amendment. He does not allege that he was deprived of life, liberty or property by the federal government as would be required for him to state a claim under the Fifth Amendment. *See Gerena v. Puerto Rico Legal Services,* 697 F.2d 447, 448 (1st Cir.1983). And he alleges no facts which would support a claim for a violation of his Sixth Amendment right to counsel.

8. Plaintiff does not allege facts which would support a finding that he was deprived of life, or that he was denied the equal protection of the law. Nor does plaintiff cite any authority for the proposition that the right to vigorously represent a client is a privilege or immunity within the meaning of the Fourteenth Amendment.

9. The I.R.S. agents were alleged to have (1) threatened Goulding with disbarment, (2) threatened his clients with penalties and audits, and (3) made defamatory statements about Goulding. *Id.* at 1104.

10. Because the defendants in *Goulding* were agents of the federal government, the plaintiff claimed the deprivation under the Fifth Amendment. Here, because the defendants are state, rather than federal, employees, DePaoli alleges a violation of his Fourteenth Amendment rights. Nevertheless, because of the similarities in the interests protected by the two clauses, the analysis in *Goulding* is both instructive and persuasive. *See Goulding,* 811 F.2d at 1102 n. 9.

by the defendants' actions. *Id.* at 1102 *citing Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976). The court specifically declined to recognize a property right in one's "business as a lawyer." *Id.* at 1103.

Likewise, the court found that Goulding had not been deprived of a liberty interest in practicing law. Again, the fact that Goulding was not prohibited from practicing law was dispositive. "A liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers." *Id.* at 1103 *quoting Perry v. Federal Bureau of Investigation,* 781 F.2d 1294, 1302 (7th Cir. 1986).

Two facts distinguish *Goulding v. Feinglass* from this case, but neither render it inapposite. First, the efforts by the I.R.S. agents in *Goulding* were allegedly targeted at Goulding's entire law practice, whereas here the alleged activities of defendants were targeted only at DePaoli's relationship with Kellotat. Second, *Goulding* involved a civil practice, while this case involves a criminal matter. The first point does not distinguish *Goulding.* If an attorney fails to state a valid § 1983 claim when his entire practice is allegedly threatened, *a fortiori,* he does not state a claim when only a single attorney-client relationship is alleged to be threatened. As to the second point, while there are cogent differences between criminal and civil matters that might call for a more strict inquiry into alleged constitutional violations in the former, these differences adhere to criminal defendants, not to their attorneys.

Other courts have reached decisions consistent with *Goulding.* For example, in *DeCamp v. Douglas County Franklin Grand Jury,* 978 F.2d 1047 (8th Cir.1992), an attorney filed a § 1983 action against two prosecutors and a grand jury after the grand jury issued a report containing a statement critical of the attorney. As here, the plaintiff alleged interference with his Fourteenth Amendment right to practice law. The court upheld the district court's ruling that the plaintiff did not state a § 1983 claim under the Fourteenth Amendment. *Id.* at 1050, *citing Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (reputation is not a liberty or property interest protected by 14th Amendment); *accord Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1268–69 (10th Cir.1989) (attorney did not state § 1983 claim against newspaper that allegedly defamed him); *Rogers v. Berger,* 682 F.Supp. 302 (W.D.Va.1988) (summary judgment appropriate where attorney brought § 1983 action against special prosecutor who issued indictment naming, but not indicting, attorney).

In another case, *Bundy v. Rudd,* 581 F.2d 1126 (5th Cir.1978), a Georgia defense attorney filed a § 1983 action against a Florida judge after his application to appear in Florida court pro hac vice on behalf of murder defendant Ted Bundy was denied. The court affirmed the district court's finding that the attorney had no Fourteenth Amendment interest in representing his client. *Id.* at 1131. Other courts have reached similar conclusions. *See, for example, Ippolito v. State of Fla.,* 824 F.Supp. 1562, 1573 (M.D.Fla.1993) (there is no fundamental right to practice law, nor is the practice of law a privilege or immunity under the Fourteenth Amendment).[11]

▮ The reasoning in these decisions applies to this case. Typically, in order to establish a deprivation of a property right under § 1983, the right must have some grounding in an independent source, such as a state law or statute. *Goss v. Lopez,* 419 U.S. 565, 572, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). DePaoli insists that he has such a source in his license to practice law. *See* Plaintiff's Opposition at 12. But he alleges no actions by defendants that have deprived him of that right. Rather, DePaoli's allegations demonstrate that he was not deprived

---

11. Indeed, the court's research has revealed only a single case that even suggests that an attorney may premise a § 1983 action on official interference with the attorney-client relationship. In *Cruz v. Beto,* 603 F.2d 1178, 1181 (5th Cir.1979), the court assumed, without deciding, that a civil rights attorney who had been severely restricted from contacting inmates at a Texas prison, who were both clients and potential clients, stated a claim under § 1983. Ultimately, however, *Cruz* is of little persuasive value since the court did not, unlike the cases cited above, squarely address the issue of whether an attorney may state a § 1983 interest in her law practice.

of his license or of his right to practice law.[12] Anything less than that is not good enough. Attorneys simply do not have a constitutionally protected property or liberty interest in representing a given client in a given case.

Common sense compels the same conclusion. There seems little to commend elevating the business of lawyering, or the lawyer's interest in representing a given client, to the status of a constitutional right. For one thing, attorneys are hardly a class meriting or requiring special protection under the law. Nor, as this case well demonstrates, is there a dearth of common law remedies available to lawyers with claims similar to DePaoli's. For example, the attorney could seek compensation by pleading actions for defamation, malicious prosecution or tortious interference with business advantage.

## II. SUMMARY JUDGMENT

In the alternative, defendants move for summary judgment on all of plaintiff's claims. In support of the motion, defendants have submitted affidavits and documents. Plaintiff, after being afforded a full opportunity to present opposing affidavits, has elected to submit nothing in response.[13]

### A. Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310,

1313 (9th Cir.1984). The moving party bears the initial burden of pointing to evidence demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the opposing party to present evidence establishing a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Summary judgment should then be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials in its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); *First Nat'l Bank*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Strong v. France*, 474 F.2d 747, 749 (9th Cir.1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

**12.** Though there is no authority on point, the court recognizes that DePaoli might, in other circumstances, be able to make a colorable argument that his appointment as publicly funded counsel was a property right protected under the due process clause of the Fourteenth Amendment. Complt. ¶¶ 48–49. However, it was the Shasta County Superior Court that deprived DePaoli of this right, not the defendants. The county court is not a defendant to this action, and even if it were it would be protected by judicial immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978). And any arguments by defendant

Carlton that may have persuaded the court to rule that DePaoli not be compensated with county funds clearly fall within the absolute immunity afforded prosecutors. *See Buckley v. Fitzsimmons*, —— U.S. ——, ——, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993).

**13.** Plaintiff did submit two affidavits in early 1992 in support of his initial motion for a preliminary injunction. They contain no evidence that raises a triable issue of material fact in regards to any of plaintiff's claims.

party. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987).

## B. DePaoli's Claims

### 1. First Cause of Action

 Plaintiff's first cause of action is based on his allegations that defendant Jarrett traveled to Los Angeles in an attempt to convince Kellotat's in-laws not to hire DePaoli as Kellotat's counsel. By sworn affidavit, Jarrett denies the truth of this allegation. Jarrett Decl. ¶ 9. DePaoli offers no evidence in support of his allegation, nor to refute Jarrett's affidavit. Therefore, he has failed to raise a triable issue of fact on the question, and summary judgment for defendant on this issue is appropriate. *First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. at 1592–93.

### 2. Second Cause of Action

Plaintiff's second cause of action is based on Jarrett, Carlton, and Bradley's alleged efforts to create a moral conflict that would cause DePaoli to recuse himself as Kellotat's counsel. This conflict was allegedly created by the defendants coaching Bradley to direct his recorded conversation with DePaoli so as to make it appear that DePaoli was attempting to bribe Bradley. As stated in their affidavits, neither Jarrett nor Carlton were motivated by anything other than their respective duties as Sheriff's Captain and District Attorney. Jarrett Decl. ¶¶ 4, 5, 8, 10, Carlton Decl. ¶¶ 5, 6, 11. It is undisputed that Bradley approached the defendants and alleged that DePaoli was attempting to bribe him. First Amended Complt. ¶ 33. Thus, defendants have presented facts demonstrating a legitimate reason for their actions. Both also aver that they in no way orchestrated the conversations between DePaoli and Bradley. Jarrett Decl. ¶ 5, Carlton Decl. ¶ 5. DePaoli offers no evidence to refute this. Accordingly, he has failed to raise a triable issue of fact and summary judgment is appropriate.

### 3. Third Cause of Action

Plaintiff's third cause of action alleges that defendants attempted to create a situation whereby DePaoli would be forced to testify against Kellotat. Again, this is based on the allegation that defendants orchestrated DePaoli's conversation with Bradley so as to create a false impression that DePaoli was attempting to bribe a witness. This cause of action cannot survive a motion for summary judgment for the same reason as the second cause of action.

### 4. Fourth Cause of Action

Plaintiff's fourth cause of action is that the defendants attempted to create a conflict of interest between plaintiff and his client so as to cause the court to remove DePaoli as attorney of record. This cause of action is basically identical to the previous two causes of action, and cannot survive summary judgment for the same reasons.

### 5. Fifth Cause of Action

Plaintiff's fifth cause of action is based upon his allegation that defendant Carlton filed bribery charges against him in retaliation for his refusal to testify against Kellotat, or in the alternative to force him to recuse himself as Kellotat's attorney. Jarrett and Carlton both state that the decision to prosecute DePaoli was made independently of DePaoli and Kellotat's decision to have DePaoli remain as defense counsel. Both further state that they never offered to drop the charges in exchange for DePaoli's withdrawal from the Kellotat case. Jarrett Decl. ¶ 6, Carlton Decl. ¶ 6. Since DePaoli offers nothing to refute these facts, summary judgment is appropriate.

### 6. Sixth Cause of Action

DePaoli's final cause of action alleges that the defendants set up DePaoli by orchestrating his taped conversations with Bradley so as to force him to choose between withdrawing and representing Kellotat without county compensation. This cause of action fails to survive summary judgment for the same reasons as the second, third and fourth causes of action.

## III. CONCLUSION

Accepting all of plaintiff's allegations as true, he has failed to state a legally cogniza-

ble claim for a violation of 28 U.S.C. § 1983 on any of his six causes of action against the defendants. Accordingly, defendants' motion to dismiss will be granted pursuant to Fed. R.Civ.P. 12(b)(6). Alternatively, and as a separate basis for dismissal, the court finds that DePaoli has failed to proffer evidence sufficient to raise a triable issue of material fact on any of his six causes of action. Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 will therefore be granted also.

IT IS THEREFORE ORDERED that defendants' motion to dismiss and motion for summary judgment be, and the same hereby are, GRANTED as to all claims.

IT IS FURTHER ORDERED that judgment be entered against plaintiff and in favor of defendants for the amount of $625.00 pursuant to this court's Order of October 4, 1993 imposing sanctions on plaintiff for his failure to appear at a scheduled status conference.

Plaintiff may file notice of appeal pursuant to Fed.R.App.P. 3, but shall file no further actions, pleadings, notices, or other papers in this court, without prior leave of this court, until he has paid the sanction of $500 to the Clerk of the United States District Court pursuant to this court's Order of November 17, 1993. *See Hymes v. United States*, 993 F.2d 701, 702 (9th Cir.1993).

