IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 9, 2025 Session

## ALAN C. CARTWRIGHT v. THOMASON HENDRIX, P.C., ET AL.

**Appeal by Permission from the Court of Appeals
Circuit Court for Shelby County
No. CT-3547-19     Robert E. Lee Davies, Senior Judge**

_____

**No. W2022-01627-SC-R11-CV**
_____

Under the Tennessee Public Participation Act, a party may seek dismissal of a lawsuit that was filed "in response to that party's exercise of the right to free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-105(a) (2021). In this appeal, we consider whether lawyers sued by their former client for legal malpractice and fraudulent concealment may seek dismissal of the lawsuit on the theory that it was filed in response to the lawyers' exercise of the right to petition—namely, the filing of a lawsuit on behalf of their client. We hold they may not. Assuming that filing a lawsuit is an "exercise of the right to petition" within the meaning of the statute, a lawyer who files a lawsuit on behalf of a client does not personally exercise that right. Instead, the lawyer at most facilitates his client's exercise of the right. Because the lawyers here cannot show that their former client filed the malpractice and fraudulent concealment action in response to the lawyers' exercise of the right to petition, the action should not be dismissed under the Tennessee Public Participation Act. We reverse the Court of Appeals' contrary holding and remand to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Case Remanded to the Circuit Court for Shelby County**

SARAH K. CAMPBELL, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., HOLLY KIRBY, J., and J. ROSS DYER and JEFFREY USMAN, SP. JJ., joined. DWIGHT E. TARWATER and MARY L. WAGNER, JJ., not participating.

H. Anthony Duncan, Nashville, Tennessee, for the appellant, Alan C. Cartwright.

Lucian T. Pera, J. Bennett Fox, Jr., and John D. Woods III, Memphis, Tennessee, for the appellees, Justin Edward Mitchell, Mitchell Law Firm, LLC, Jerry Edward Mitchell, Thomason Hendrix, P.C., Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC, and Lewis, Thomason, King, Krieg & Waldrop, PC (Memphis).

# OPINION

## I.

Alan Cartwright is the beneficiary of a family trust established by his late father. Cartwright's sister, Alice Garner, and her husband, Alan Garner, manage the trust and various related entities. Between 2004 and 2018, a lawyer named Jerry Mitchell represented Cartwright in a series of six lawsuits against the Garners regarding their administration of the trust. He also assisted Cartwright in a seventh lawsuit that was filed pro se. Jerry's son, Justin Mitchell, represented Cartwright in some of the lawsuits when he started practicing with his father in 2009.

The six lawsuits in which the Mitchells represented Cartwright were eventually resolved in the Garners' favor. *See Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014); *Cartwright v. Garner*, No. W2016-01424-COA-R3-CV, 2018 WL 4492742 (Tenn. Ct. App. Sept. 19, 2018); *Cartwright v. Garner*, No. W2016-01423-COA-R3-CV, 2018 WL 3814632 (Tenn. Ct. App. Aug. 10, 2018); *Cartwright v. Jackson Cap. Partners*, 478 S.W.3d 596 (Tenn. Ct. App. 2015); Order, *Cartwright v. Garner*, No. CT-004569-12 (Shelby Cnty. Cir. Ct. Dec. 17, 2018). Cartwright and the Garners settled the seventh lawsuit. *See* Order, *Cartwright v. Garner*, No. PR-008976 (Shelby Cnty. Prob. Ct. Feb. 10, 2021).

Dissatisfied with the Mitchells' legal representation, Cartwright sued the Mitchells, asserting claims for legal malpractice and fraudulent concealment.[1] The Garners also sued the Mitchells in a separate lawsuit. This appeal arises from Cartwright's lawsuit.[2]

Cartwright alleged that the Mitchells breached their duty to him by filing non-meritorious lawsuits against the Garners with the hope of earning a large contingency fee. He further alleged that the Mitchells failed to keep him reasonably informed about the lawsuits and concealed information from him regarding their lack of success. When the lawsuits were resolved in the Garners' favor, Cartwright was left on the hook for attorney's fees.

---

[1] Cartwright also sued the Mitchells' law firms and their predecessors in interest under a theory of vicarious liability. Those defendants include the Mitchell Law Firm, LLC; Lewis, Thomason, King, Krieg & Waldrop, P.C.; Thomason Hendrix, P.C.; and Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC. When Jerry Mitchell died in 2021, the personal representative of his estate was substituted as a defendant. All of these defendants are also parties to this appeal. Although we refer to the Mitchells in this opinion given their more direct role in the underlying facts, our analysis applies equally to the other defendants.

[2] The Garners' suit against the Mitchells is also pending before this Court. The cases were docketed together and argued on the same day. *See Garner v. Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC*, No. W2022-01636-SC-R11-CV, 2024 WL 4021932 (Tenn. Aug. 28, 2024); *Cartwright v. Thomason Hendrix, P.C.*, No. W2022-01627-SC-R11-CV, 2024 WL 4022193 (Tenn. Aug. 28, 2024).

The Mitchells filed a petition to dismiss Cartwright's complaint under the Tennessee Public Participation Act ("TPPA"), "Tennessee's version of an anti-SLAPP statute." *Charles v. McQueen*, 693 S.W.3d 262, 267 (Tenn. 2024). The acronym "SLAPP" refers to a strategic lawsuit against public participation—that is, a lawsuit aimed primarily at chilling the speech of the defendant instead of succeeding on the merits. *Id.*

At the first step of the two-step analysis required to rule on a TPPA petition, the party seeking dismissal of the complaint must make a prima facie case that the challenged lawsuit "is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-105(a) (2021); *see also Charles*, 693 S.W.3d at 267. If the petitioning party meets that burden, step two of the analysis is to determine "whether the respondent has made a prima facie case for each essential element of his claim." *Charles*, 693 S.W.3d at 267; Tenn. Code Ann. § 20-17-105(b). If the respondent does not meet this burden or if the petitioner "establishes a valid defense to the claims," then "the court shall dismiss the legal action." Tenn. Code Ann. § 20-17-105(b)–(c); *Charles*, 693 S.W.3d at 267–68.

The Mitchells contended that Cartwright's lawsuit was based on, related to, or in response to their exercise of the right to petition because it was "expressly based upon [their] conduct in filing, and continuing to pursue, lawsuits on behalf of" Cartwright. Moreover, Cartwright's complaint requested "damages directly related to the filing and pursuit of those lawsuits."

The trial court denied the Mitchells' petition for dismissal. The court read the statutory definition of the "exercise of the right to petition" to include an attorney's act of "fil[ing] pleadings or mak[ing] statements on behalf of a client." But it concluded that "an attorney who is being sued for legal malpractice and fraud by his former client can never" make the required showing at step one of the TPPA analysis. The court reasoned that a malpractice suit seeks to encourage competent representation, not chill constitutional rights. And it noted that a lawyer who is sued for malpractice allegedly acted contrary to—not in furtherance of—his client's interests.

The Mitchells appealed, and the Court of Appeals reversed. *Cartwright v. Thomason Hendrix, P.C.*, No. W2022-01627-COA-R3-CV, 2024 WL 1618895, at *12 (Tenn. Ct. App. Apr. 15, 2024), *perm. app. granted*, (Tenn. Aug. 28, 2024). The court concluded that "legal malpractice claims are not categorically excluded from the ambit of the TPPA." *Id.* at *11. And it held that the Mitchells had made a prima facie case that Cartwright's complaint was "based on, related to, or in response to" the exercise of the right to petition because its allegations "at the very least, have to do with the petitions" filed by the Mitchells on Cartwright's behalf. *Id.* (quoting Tenn. Code Ann. § 20-17-105(a)).

- 3 -

We granted Cartwright's application for permission to appeal. *Cartwright v. Thomason Hendrix, P.C.*, No. W2022-01627-SC-R11-CV, 2024 WL 4022193 (Tenn. Aug. 28, 2024).

## II.

This Court reviews questions of constitutional law and statutory interpretation de novo. *Gilliam v. Gerregano*, --- S.W.3d ---, No. M2022-00083-SC-R11-CV, 2025 WL 617603, at *4 (Tenn. Feb. 26, 2025); *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024). "We give the words of a statute their 'natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)). "We consider the whole text of a statute and interpret each word 'so that no part will be inoperative, superfluous, void or insignificant.'" *Id.* (quoting *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 228 (Tenn. 2010)).

## III.

The issue in this appeal is whether the Mitchells made a prima facie case that Cartwright's lawsuit against them was based on, related to, or in response to their exercise of the right to petition within the meaning of the TPPA. We begin by examining the TPPA's requirements in more detail. We then conclude that the Mitchells failed to make the required showing because a lawyer who files litigation on behalf of a client is not exercising *the lawyer's* right to petition.

### A.

The TPPA aims to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law," while also "protect[ing] the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102; *see also Charles*, 693 S.W.3d at 267 ("The TPPA attempts to strike a balance between two competing interests."). To that end, if "a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association," the TPPA allows that party to "petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104(a).

Courts apply a burden-shifting framework to evaluate a petition to dismiss under the TPPA. Initially, "[t]he petitioning party has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association." *Id.* § 20-17-105(a). "If the petitioning party meets this burden, the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential

- 4 -

element of the claim in the legal action." *Id.* § 20-17-105(b). If the responding party establishes a prima facie case, the court must still dismiss the action "if the petitioning party establishes a valid defense to the claims." *Id.* § 20-17-105(c).

Of importance here, the party petitioning for dismissal must establish that the legal action was filed in response to "*that party's* exercise of the . . . right to petition." *Id.* § 20-17-105(a) (emphasis added); *see also id.* § 20-17-104(a) ("If a legal action is filed in response to *a party's* exercise of the . . . right to petition . . . *that party* may petition the court to dismiss the legal action." (emphasis added)).

The "exercise of the right to petition" is a statutorily defined term. As used in the TPPA, it means "a communication that falls within the protection of the United States Constitution or the Tennessee Constitution" that is either "intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body" or "intended to enlist public participation in an effort to effect consideration of an issue by a . . . governmental body." *Id.* § 20-17-103(4), (4)(A)–(B). The TPPA further defines "communication" as "the making or submitting of a statement or document in any form or medium, including oral, written, audiovisual, or electronic." *Id.* § 20-17-103(1).

B.

1.

The Mitchells argue that their commencement of a lawsuit on behalf of Cartwright meets the statutory definition of the "exercise of the right to petition." As relevant here, the "exercise of the right to petition" means a "communication"—that is, "the making or submitting of a statement or document in any form or medium, including oral, written, audiovisual, or electronic," *id.*—that "falls within the protection of the United States Constitution or the Tennessee Constitution and . . . [i]s intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body," *id.* § 20-17-103(4), (4)(A). There is no real dispute that the filing of a lawsuit is a "communication" that is "intended to encourage consideration or review" by a judicial body. The harder question is whether that communication "falls within the protection of the United States Constitution or the Tennessee Constitution."

The Mitchells contend that the right to file a lawsuit has two sources of constitutional protection: the Petition Clause of the First Amendment to the United States Constitution, U.S. Const. amend. I, and the Open Courts Provision of the Tennessee Constitution, Tenn. Const. art. I, § 17. We briefly consider these provisions in turn.

The First Amendment's Petition Clause protects the "right of the people . . . to petition the Government for a redress of grievances." U.S. Const., amend. I.[3] Relying on earlier precedents, the United States Supreme Court stated in *Borough of Duryea, Pennsylvania v. Guarnieri*, that "the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." 564 U.S. 379, 387 (2011). The parties in *Guarnieri*, however, "litigated [that] case on the premise that . . . lawsuit[s] are petitions protected by the Petition Clause." *Id.* at 387. So that issue was not squarely before the Court. Writing separately, Justices Scalia and Thomas both questioned whether the Court's earlier precedents had ever "actually *held* that a lawsuit is a constitutionally protected 'Petition'" and expressed doubts that such a holding would be correct as an original matter. *Id.* at 402–07 (Scalia, J., concurring in the judgment in part and dissenting in part); *id.* at 399–400 (Thomas, J., concurring in the judgment).

The Open Courts Provision of the Tennessee Constitution provides in relevant part "[t]hat all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay." Tenn. Const. art. I, § 17. In *Case v. Wilmington Trust*, we described this provision as "guarantee[ing] access to the courts and remedy for every injury to one's 'lands, goods, person or reputation.'" 703 S.W.3d 274, 288 (Tenn. 2024) (quoting Tenn. Const. art. I, § 17). Yet we have never considered whether this right of access protects an individual's ability to file a lawsuit or defined the scope of any such right.

This case hinges on whether an attorney bringing a lawsuit on behalf of others is engaged in his own exercise of the right to petition. Because we can answer that question without resolving whether or to what extent the federal Petition Clause or Tennessee's Open Courts Provision protects an individuals' right to bring a lawsuit, we proceed on the assumption that filing a lawsuit constitutes an "exercise of the right to petition" under the TPPA, without deciding that issue. *See Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) ("It is well-settled in Tennessee that 'courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties.'" (quoting *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002))).

---

[3] The Tennessee Constitution has a similar provision. Article I, section 23 of the Tennessee Constitution states in relevant part that "citizens have a right . . . to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance." Although article I, section 23 could arguably protect an individual's ability to file a lawsuit, the Mitchells did not raise that issue here, and so we do not consider it. *See State v. Bristol*, 654 S.W.3d 917, 923 (Tenn. 2022) ("[A]n appellate court's authority 'generally will extend only to those issues presented for review.'" (quoting Tenn. R. App. P. 13(b))).

2.

To clear the first hurdle to obtain dismissal under the TPPA, the Mitchells must establish a prima facie case that Cartwright's malpractice and fraud action was based on, related to, or in response to *the Mitchells'* "exercise of the . . . right to petition." Tenn. Code Ann. § 20-17-105(a). Even assuming that the federal Petition Clause or Tennessee's Open Courts Provision protects the right to file a lawsuit as a general matter, the Mitchells cannot show that *they* were exercising the right to petition when they filed lawsuits on behalf of Cartwright.[4]

Start with the Petition Clause. The United States Supreme Court has never decided whether the federal right to petition protects attorneys when they file lawsuits on behalf of their clients. But several lower federal courts and state courts have considered the issue, and all either rejected or expressed serious doubts about that proposition. *See, e.g.*, *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Dep'ts, App. Div. of the Sup. Ct. of N.Y.*, 852 F.3d 178, 186 (2d Cir. 2017) ("The Supreme Court has never held, however, that attorneys have . . . their *own* right to petition the government for the redress of their clients' grievances when the lawyers are acting as advocates for others, and not advocating for their own cause."); *Nat'l Ass'n for the Advancement of Multijurisdictional Practice v. Castille*, 799 F.3d 216, 224 (3d Cir. 2015) ("Appellants provide no support for the proposition that the Petition Clause protects the right of an *attorney* to appeal to courts or other forums on behalf of another."); *Sawicki v. Kipphan*, No. 1:21-CV-02031, 2023 WL 3061850, at *6 (M.D. Pa. Apr. 24, 2023) (noting that the plaintiff "ha[d] not cited any authority to support her proposition that she had a First Amendment right to represent" a client and had in fact "cite[d] caselaw that directly refute[d] this assertion"); *DePaoli v. Carlton*, 878 F. Supp. 1351, 1355 (E.D. Cal. 1995) ("In the context of a court proceeding the right to petition is the client's, not the attorney's. An attorney may not claim a right to petition based upon representation of a client."); *People v. Shell*, 148 P.3d 162, 174 (Colo. 2006) ("As we [have previously] held . . ., the First Amendment right to file a lawsuit does not extend to filing a lawsuit on behalf of another, nor does it prohibit the state from restricting legal representation to licensed attorneys."); *cf. Pollick v. McAndrew*, No. 22-1691, 2023 WL 4785513, at *2 (3d Cir. July 27, 2023) (finding it unclear whether an attorney "can claim First Amendment protection on her own behalf for representing a client").

To support their contrary position, the Mitchells cite the United States Supreme Court's decision in *NAACP v. Button*. 371 U.S. 415 (1963). But that case concerned a lawyer's right to *associate,* not the right to petition. In *Button*, the NAACP challenged a

---

[4] The Mitchells argue that Cartwright waived this argument by failing to designate it as an issue in his briefing here or in the Court of Appeals. The Mitchells' argument is a non-starter. It is the Mitchells who bear the burden under the TPPA to establish that Cartwright's suit was filed in response to their exercise of the right to petition.

Virginia law that prohibited the improper solicitation of any legal or professional business. *Id.* at 417–20. The NAACP alleged that the statute "infringe[d] the right of the NAACP and its members and lawyers to *associate* for the purpose of assisting persons who seek legal redress." *Id.* at 428 (emphasis added). The United States Supreme Court agreed, concluding that the law prevented "members of the NAACP" from urging aggrieved individuals to "exercise their legal rights and to retain members of the [NAACP's] legal staff" to represent them. *Id.* at 437. *Button*, however, says nothing about the right to petition.

The Mitchells also rely on *Novoselsky v. Brown*. 822 F.3d 342 (7th Cir. 2016). In that case, a lawyer sued a county clerk under section 1983 alleging that the clerk had retaliated against the lawyer for exercising his First Amendment right to file lawsuits against the clerk on behalf of his clients. *Id.* at 346, 355. But the court concluded that "nothing in [the relevant precedents] settles whether an attorney herself has a personal constitutional right to file lawsuits on behalf of her client." *Id.* at 355. And the court found it unnecessary to decide that issue because the lawyer had failed to prove that the clerk's allegedly retaliatory conduct was actionable. *Id.* at 356. If anything, *Novoselsky* undermines rather than strengthens the Mitchells' position.

Finally, the Mitchells cite *Jacoby & Meyers*. 852 F.3d 178 (2d Cir. 2017). There, the Second Circuit addressed whether a ban on non-lawyer investment in for-profit firms violated lawyers' associational and petition rights. *Id.* at 184. The court distinguished between lawyers representing an "advocacy group like the ACLU or NAACP" and those "engaged in litigation for their own commercial rewards." *Id.* at 186 (first citing *In re Primus*, 436 U.S. 412 (1978); and then citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)). The court reasoned that when a lawyer's "own expressive interests align with" his client's "First Amendment expressive rights," then the lawyer "may have a cognizable First Amendment interest in pursuing the litigation." *Id.* at 187. Yet it rejected the notion that a "lawyer's generic act of pursuing litigation on behalf of any client" is protected by the First Amendment. *Id.* The court explained that "the rights of petition and assembly attach to 'the people'—who are *themselves* aggrieved and accordingly who seek to assemble or to petition in order to redress their own grievances." *Id.* (quoting U.S. Const. amend. I). By contrast, "[l]awyers in a for-profit practice who act in their representative capacities do not themselves seek access to the courts to remediate their own grievances." *Id.* They instead seek access only "as a part of a commercial transaction in which they serve, and are paid." *Id.* The court held that "in the context of for-profit law firms that serve their clients' interest as a business, [the right to petition] belongs to the client, not the attorney." *Id.* at 188. Because the law firms challenging the ban at issue in *Jacoby & Meyers* were "engaged in the practice of law as a business," they failed to state a claim that the challenged ban violated their First Amendment rights. *Id.* at 188–89.

*Jacoby & Meyers* does not help the Mitchells. Even if the Second Circuit is right that lawyers *sometimes* exercise First Amendment rights when their expressive interests align with those of the non-profit advocacy organization they are representing, the Mitchells have not alleged that their representation of Cartwright presents that unique situation. Nor could they. The Mitchells were "engaged in the practice of law as a business." *Id.* at 188. *Jacoby & Meyers* held that, in this context, the right to petition "belongs to the client, not the attorney." *Id.*

The Court of Appeals concluded that the Mitchells satisfied the Second Circuit's expressive interest requirement because Cartwright alleged that it was the Mitchells' "own interests that led them to pursue the allegedly frivolous litigation against the Garners." *Cartwright*, 2024 WL 1618895, at *8 n.16. The Mitchells press the same argument in this Court. But both the Court of Appeals and the Mitchells fundamentally misunderstand *Jacoby & Meyers*. That case did not hold that a lawyer exercises First Amendment rights whenever he acts in his own interests. Rather, the distinction drawn in that case rests on the *expressive* and *associational* interests that are potentially implicated when an attorney litigates on behalf of a non-profit advocacy organization. *Jacoby & Meyers*, 852 F.3d at 185–87.

The Mitchells do not allege that they were pursuing their own expressive or associational interests by bringing lawsuits on behalf of Cartwright. Regardless, the Mitchells were not providing legal services for a "not-for-profit political advocacy organization." *Id.* at 188. As the Second Circuit explained, "the Supreme Court has taken pains to differentiate between the protections that the Constitution affords the activities of lawyers acting in a for-profit setting and those acting in a not-for-profit context, advocating political causes in which the attorneys themselves share." *Id.* The Mitchells were operating in the former for-profit setting.

3.

The nature of the attorney-client relationship further supports the conclusion that a lawyer does not personally exercise the right to petition when he brings litigation on behalf of a client. That relationship is a "quintessential principal-agent relationship," with the attorney acting as the client's agent. *Comm'r of Internal Revenue v. Banks*, 543 U.S. 426, 436 (2005); *see also* Joseph Story, *Commentaries on the Law of Agency* § 3 (1839) ("[H]e, who . . . employs another person . . . is called the Principal, Constituent, or Employer; and he, who is thus employed, is called the Agent, Attorney, Proxy, or Delegate . . . ."); *Attorney*, Samuel Johnson, *A Dictionary of the English Language* (10th ed. 1792) ("[A] person as by consent, commandment, or request, takes heed, sees, and takes upon him the charge of other men's business in their absence."); *Attorney*, 1 Richard Burn & John Burn, *A New Law Dictionary* 69 (1792) ("[H]e that is appointed by another to do any thing in the *turn* or stead of that other."). Accordingly, the relationship is governed by agency law. *See,*

- 9 -

*e.g.*, Edward P. Weeks, *A Treatise on Attorneys and Counsellors at Law* § 216 (1878) ("The law of principal and agent is generally applicable to the relation of attorney and client."); Francis Wharton, *A Commentary on the Law of Agency and Agents* § 580 (1876) ("The client is bound, according to the ordinary rules of agency, by the acts of his attorney within the scope of the latter's authority.").

A foundational premise of agency law is that when an agent acts within the scope of the authority the principal has delegated, it is as if the principal has acted. Story, *supra*, § 2 ("[W]hatever a man *sui juris* may do of himself, he may do by another; and . . . what is done by another is to be deemed done by the party himself."); William Paley, *A Treatise on the Law of Principal and Agent* 289 (2d ed. 1822) ("No rule of law . . . is better ascertained, or stands upon a stronger foundation than this, that where an agent names his principal, the principal is responsible and not the agent."). This rule has long been applied to the attorney-client relationship. It is well settled, for example, that attorneys may not act outside the scope of their delegated authority. Story, *supra*, § 147 ("[T]he attorney cannot [act] in his own name, nor as his proper act; but in the name and as the act of him, who gives the authority."); Weeks, *supra*, § 216 ("The client is bound, according to the ordinary rules of agency, by the acts of his attorney, within the scope of the latter's authority."); *Osborn v. Bank of U.S.*, 22 U.S. 738, 829 (1824) ("[N]o man has a right to appear as the attorney of another, without the authority of that other."). Indeed, at one time courts required lawyers to file a "warrant of attorney" along with the pleadings, certifying the authority of the lawyer to act on behalf of his client. *See* Weeks, *supra*, § 185; Charles Warren, *A History of the American Bar* 94 (1911) (noting a New York court rule requiring the filing of a warrant of attorney).

Like other agents, attorneys acting within the scope of their authority possess significant power to create legal obligations for their clients with respect to third parties. *See, e.g.*, Weeks, *supra*, § 222 ("As between the client and the opposite party the former is bound by every act which the attorney does in the regular course of practice . . . however injudicious the act may be."). Also like other agents, an attorney is generally not personally liable to those third parties for the agreements, unless the attorney was acting without authority or in an illegal manner. *Id.* § 127; *cf.* 3 William Blackstone, *Commentaries on the Law of England* *29 (1832) ("[I]t hath been holden that a counsel is not answerable for any matter by him spoken, relative to the cause in hand, and suggested in his client's instructions . . . ."); Paley, *supra*, at 317 ("[I]f an attorney, by direction of his client, bring an action, however groundless or vexatious it may be, he is not liable.").

It follows from these principles that, when an attorney files a lawsuit on behalf of a client, it is the client who files the lawsuit, not the attorney. Assuming that the filing of a lawsuit is an exercise of the right to petition, then, the client exercises that right, not the attorney. An attorney simply facilitates the client's exercise of that right.

The actual filing practices of attorneys further prove this point. When attorneys file pleadings and other documents on behalf of clients, they generally draft those pleadings in the client's voice—it is the *plaintiff* who asserts claims and the *defendant* who raises defenses, not the party's attorney. *See generally* Joseph Story, *A Selection of Pleadings in Civil Actions* (1805) (collecting examples of this practice). This case is no exception. Although Cartwright's lawyer filed the complaint in this case, the complaint made clear that "*Mr. Cartwright* [was] demand[ing] a judgment against Defendants." (emphasis added). Similarly, although the Mitchells' lawyer filed the petition to dismiss Cartwright's complaint, that petition stated that "Defendants . . . [were] submit[ting]" the petition. The complaints the Mitchells filed on Cartwright's behalf in the trust litigation were no different. One of them opened with the line, "Alan C. Cartwright . . . states as follows," and another stated, "Alan C. Cartwright . . . files this Complaint against defendants." In other words, the parties' *lawyers* did not petition the trial court for relief; they simply told the trial court, on behalf of the parties, that *the parties* were petitioning the trial court for relief.

4.

Finally, we consider whether Tennessee's Open Courts Provision protects an attorney's right to file a lawsuit on his client's behalf. That provision reads as follows: "That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law . . . ." Tenn. Const. art. I, § 17. As we explained in *Wilmington Trust*, the Open Courts Provision guarantees those who have suffered an injury in law a right of access to the courts. 703 S.W.3d at 287 (noting that the "open courts provision guarantee[s] access to the courts and remedy only for injuries to legal rights cognizable under constitutional, statutory, or common law"). A lawyer filing a lawsuit on behalf of a *client* who has suffered an injury has not personally suffered an injury that would guarantee him an independent right of access. As with the federal right to petition, a lawyer who files a lawsuit on behalf of a client is not personally exercising any right granted by the Open Courts Provision. He is instead facilitating his client's exercise of that right.

\*      \*      \*

In sum, a lawyer who files a lawsuit on behalf of a client is not personally exercising the right to petition within the meaning of the TPPA. When the lawyer's client sues the lawyer for malpractice and fraudulent concealment based on that litigation, the lawyer cannot show that the client's lawsuit is "based on, relates to, or is in response to [the lawyer's] exercise of the . . . right to petition." Tenn. Code Ann. § 20-17-105(a). He therefore may not obtain dismissal of the lawsuit under the TPPA on those grounds.

- 11 -

5.

Resisting this conclusion, the Mitchells urge us to instead follow the Texas Supreme Court's reasoning in *Youngkin v. Hines*. 546 S.W.3d 675 (Tex. 2018). In *Youngkin*, which involved a malpractice claim against an attorney by a nonclient, the Texas Supreme Court held that an attorney's filing of a lawsuit on behalf of his client constituted an exercise of the attorney's "right to petition" under Texas's anti-SLAPP statute. *Id.* at 679–81. In Texas, a party "may invoke the [anti-SLAPP statute's] dismissal procedure if that party shows by a preponderance of the evidence that the legal action against it 'is based on, relates to, or is in response to' the party's exercise of the right to speak, petition or associate." *Id.* at 680 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a)).

The Texas Supreme Court concluded that the malpractice claim at issue was filed in response to the attorney's "exercise of the right to petition" because it stemmed from a statement the attorney made in a judicial proceeding. *Id.* at 680–81. Significantly, however, the court expressly declined to "opine on whether an attorney has a constitutional right to petition that encompasses speaking on behalf of a client." *Id.* at 681. It did so because the Texas legislature had "explicitly defined the term 'exercise of the right to petition'" to mean, in relevant part, "a communication in or pertaining to . . . a judicial proceeding." *Id.* at 680–81 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)). Unlike the TPPA, Texas's statute does not require a communication to be constitutionally protected to qualify as an "exercise of the right to petition." The court reasoned that "to add a requirement to the statute . . . that it should *only* apply to constitutionally guaranteed activities . . . would be disloyal to [the statute's] enacted text." *Id.* at 681.[5]

Because the Texas Supreme Court's decision in *Youngkin* was based on a materially different statutory definition of "exercise of the right to petition," it provides little guidance here. We are obligated to decide this case based on the statutory definition in the TPPA, and that definition requires us to consider whether the lawsuit at issue was filed in response to the lawyer's exercise of a constitutional right. As explained above, a lawyer who files a lawsuit on behalf of a client is not personally exercising constitutional rights under either the federal Petition Clause or Tennessee's Open Courts provision.

---

[5] After the *Youngkin* decision, the Texas legislature amended Texas's anti-SLAPP statute to expressly exclude from its ambit "a legal malpractice action brought by a client or former client." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(13) (Supp. 2024).

- 12 -

## CONCLUSION

We conclude that the Mitchells failed to make a prima facie case that Cartwright's malpractice and fraud suit was brought in response to their "exercise of the right to petition" as defined by the TPPA. Their TPPA petition must therefore be denied. We reverse the Court of Appeals' contrary holding and remand to the trial court for further proceedings.

_____
SARAH K. CAMPBELL, JUSTICE

- 13 -